RECEIVED

MAR 0 3 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PAULA LAVERGNE | CIVIL ACTION NO. 04-0753 |
| VERSUS | JUDGE DOHERTY |
| METROPOLITAN LIFE INSURANCE COMPANY | MAGISTRATE JUDGE METHVIN |

## RULING

The plaintiff has asserted a claim for benefits, penalties and/or attorney's fees arising out of the denial of her claim for short-term disability benefits governed by the Employee Retirement Income Security Action of 1974 ["ERISA"]. The parties have submitted this case for trial on briefs.[1] All briefing has now been completed and this matter is under advisement by the Court.

## FACTS AND PROCEDURAL STATUS

This Court has reviewed the record, including all briefing and the Administrative Record filed into the record by Metropolitan Life Insurance Company [hereinafter sometimes referenced as "MetLife"] as ordered by this Court.[2] Based upon that review, this Court finds that the facts relevant to this matter are as follows.

Paula Lavergne was an employee of Cingular Wireless LLC prior to, and until, February 9, 2004. As an employee – and at all times pertinent hereto – she was covered by a Disability Plan which provided short-term disability benefits [hereinafter sometimes referenced as "STD" benefits],

---

[1] *See* Minute Entry of April 27, 2005 [Doc. 20].

[2] The Administrative Record can be found in the record as an attachment to Document 14. Citations to the Administrative Record will appear as "Administrative Record," followed by the specific page number.

long-term disability benefits, and supplemental long-term disability benefits [hereinafter sometimes referenced as "the Plan"].[3] A Summary Plan Description is contained in the Administrative Record,[4] and provides as follows.

The Plan was sponsored by her employer, Cingular.[5] It was administered by the Administrative Committee of Cingular, which delegated the responsibility for plan administration and interpretation to the defendant, MetLife.[6] The Plan grants full and complete discretion to the Administrative Committee to interpret the Plan and to determine benefits under the Plan, and the Administrative Committee has delegated to MetLife all of its discretion and authority to consider claims for benefits:

> The Administrative Committee of Cingular Wireless . . . [has] exclusive power to construe and to interpret the Plans and make all determinations, including, but not limited to, questions of eligibility for participation and for receipt of benefits . . . [and] delegation of any of its fiduciary authority to determine and review claims.[7]
>
> The Administrative Committee, as the Plan Administrator, *and any entity to whom the Administrative Committee delegates any of its authority regarding plan administration interpretation and the payment of and review of claims . . . has the fullest exclusive discretionary authority to make all determinations under the Plans, including, but not limited to, the authority to construe and to interpret the Plans, to decide all questions of eligibility for the benefits (including any necessary factual*

---

[3] Administrative Record, SPD 001.

[4] Id., SPD 001 to SPD 062.

[5] "The Plans offered by Cingular Wireless [including the Short-term Disability Plan at issue here] are sponsored by: Cingular Wireless LLC." Id., SPD 036.

[6] "The Disability Plan is administered by the Administrative Committee of [Cingular Wireless]. The Administrative Committee has delegated authority for claims determination and claims review on appeal to the Claims Administrator, MetLife." Id., SPD 034. *See also* Id., SPD 037-38.

[7] Id., SPD 037.

*determinations)* and to determine the amount of such benefits; its decisions on all such matters and determinations are final and conclusive and shall be provided the fullest discretion provided by law.[8]

The Plan provides disability benefits to active employees,[9] and "total disability" is defined as a condition where, "due to an illness or injury you are unable to perform your customary occupation or another available job assigned by your Company with the same full- or part-time classification for which you are reasonably qualified."[10] An employee who wishes to receive disability benefits must file a claim and support that claim with certain types of information demonstrating that she is disabled:

> You must file Disability claims with the appointed Claims Administrator. The Claims Administrator will determine whether you are Disabled under the terms of the STD. . . Plan. In order to establish your Disability you must present credible, objective medical evidence. . . . While you are receiving benefits under the STD . . . you are required periodically to provide the Claims Administrator with supplemental medical information from your physician documenting your continued Disability. . . . *It is your responsibility to provide the documentation supporting your claim. If you fail to submit the documentation requested by the Claims Administrator . . . your claim will be denied and your STD . . . . benefits will stop.*[11]

Finally, an employee who fails to return to an active work status once her short term disability benefits have ended will be terminated from the company's employment.[12]

In September 2003, as a result of worsening back pain, Ms. Lavergne filed a claim for short-

---

[8] Id. (emphasis added); SPD 032.

[9] "Active Employee or Active Work means . . . you have not been terminated by the Company." Id., SPD 005.

[10] Id., SPD 006.

[11] Id., SPD 031 (emphasis added). *See also* Id., SPD 025.

[12] Id., SPD 022.

term benefits due under the Plan.[13] That claim was approved by MetLife, with a start date of September 27, 2003. Thereafter, extensions of her disability status were granted through January 5, 2004. During that period, Ms. Lavergne underwent surgery involving an anterior lumbar fusion at the L4-5 level.

After Ms. Lavergne's surgery on November 20, 2003, in a letter which acknowledged an extension of her disability benefits, MetLife informed Ms. Lavergne that any further extension of disability benefits would require that she produce specific information:

> If you are unable to return to work at the end of this approved period of 1/5/04, you must request a new claim for STD by providing specific medical information to MetLife. Your health care provider must provide the following information to MetLife prior to 1/5/04 to avoid termination of disability benefits:
>
> 1. Completed Attending Physician Statement form (enclosed).
> 2. Copies of all current office notes and test results.
> 3. Copy of Physical Therapy Evaluation.
> 4. Reason your recovery has been delayed.
> 5. Functional abilities.
> 6. Expected return to work date.
>
> If you do not provide the requested information supporting a determination of disability beyond the approved period in this letter, you are not approved to receive benefits after that date.[14]

On December 2, 2003, Ms. Lavergne's treating physician, Dr. Williams, faxed to MetLife a handwritten note stating as follows:

> This is to [note] that Mrs. Lavergne is status post-____ lumbar interbody fusion from

---

[13] While the plaintiff has made passing reference, at several points during the course of this matter, to long-term disability benefits, she has produced no evidence of having ever applied for long-term disability benefits. The only applications contained within the Administrative Record are for short-term disability payments and, therefore, only short-term disability benefits are at issue herein.

[14] Id., M 107.

L4-S1 due to chronic pain. [unreadable sentence] She cannot work for at least 6 months. It will take a total of 18 months to recover from the surgery.[15]

The following week, however, Dr. Williams also issued the following typewritten note:

> Ms. Lavergne is status post fusion L4-5 with the new pyramid system secondary to have [sic] discogenic pain. She is doing quite well and her pain in her back has resolved. She has some paresthesia of the left anterolateral cutaneous nerve at L4-5. She has hematoma and involvement of the abdomen. Incision is well-healed.
>
> Neurologically, she has 5/5 motor strength. She does have paresthesia in the left lateral femoral cutaneous nerve at the L4-5.
>
> Plan:
> 1. She is given a prescription for Wellbutrin to help her resolve her smoking.
> 2. Continue walking, but avoid any bending, twisting, or lifting.
> 3. See her back in 6 weeks.[16]

By the cutoff date of January 5, 2004, MetLife had both of Dr. Williams' notes in its file, together with a partially-completed Attending Physician Statement ["APS"] in which Dr. Williams indicated that he had last seen Ms. Lavergne on December 9, 2003, and indicating that she could not work for at least six (6) months. No information concerning Ms. Lavergne's "Subjective Symptoms," Dr. Williams' "Objective Findings," nor the "Current and Recommended Treatment Plans," was provided in this APS.[17] In other words, Dr. Williams simply declared that Ms. Lavergne could not work for six (6) months and did not provide any further information to support that statement; nor did he explain the substantial discrepancy between his description of Ms. Lavergne's condition on December 2, 2003 and that of December 9, 2003.

---

[15] Id., M 099.

[16] Id., M 116.

[17] Id., M 111.

According to the computer-based diary maintained by MetLife concerning Ms. Lavergne's claim, someone from MetLife contacted Ms. Lavergne on January 15 and 16, 2004, and informed her that the information which had been submitted by Dr. Williams on her behalf did not support a finding that she was "totally disabled" as defined in the Plan.[18] Despite this notice, neither Ms. Lavergne, nor anyone on her behalf, submitted any further information to MetLife concerning her disability status and claim. When Ms. Lavergne failed to return to work after her disability status ended, Cingular terminated her employment.

Shortly thereafter, Ms. Lavergne retained counsel, who submitted a letter to MetLife declaring that Ms. Lavergne intended to appeal the denial of her claim. The record does not contain any indication that the formal appeal process described in the Summary Plan Description was followed, nor that there was any followup by either party to Ms. Lavergne's declared intent to pursue her administrative appeal.

On March 30, 2004, Ms. Lavergne initiated this action, seeking to recover benefits she claims are due to her under the terms of the Plan. In response, the defendant filed a counterclaim, seeking to recover attorney's fees incurred in defending this action. The parties are in agreement (and have stipulated) that the claims asserted by both of them are controlled by ERISA and that neither of them has asserted any state-law claim in this action.[19]

## APPLICABLE LAW AND ANALYSIS

### I.    The Administrative Record

Before considering the merits of the parties' claims, this Court must address a question

---

[18]    Id., M 118.

[19]    Docs. 12, 16.

concerning the completeness of the record. In a document entitled "Joint Stipulation Pursuant to ERISA Case Order," signed by counsel for both parties herein, the plaintiff agreed, *inter alia*, that "MetLife's administrative record regarding Plaintiff's claim for short term disability benefits under the Cingular Wireless Short-term Disability Plan is complete."[20] Approximately two weeks later, however, in a document entitled "Plaintiff's Response to ERISA Case Order," the plaintiff included the following statement: "Based upon information and belief, Plaintiff alleges that the administrative record is not complete."[21] The plaintiff has provided no explanation as to why both of these statements – the former is a *stipulation* – appear in the record. However, in her trial brief, she does explain the basis for her declaration that the administrative record is incomplete.

> In plaintiff's response to the ERISA CASE ORDER, plaintiff alleged that the administrative record was not complete because she was waiting on a medical report from Dr. George Williams. Relative to this allegation, plaintiff submits an additional medical document as herein evidence attached hereto and made a part hereof.[22]

Thus, the plaintiff wishes to submit into the record *new* evidence (correspondence by Dr. Williams issued on February 22, 2005) created long *after* the claim process had ended, *after* the administrative appeal delays had run, and *after* this action was initiated.

The plaintiff's request reflects a serious misunderstanding of both the purpose and the role of this Court's review of the Claims Administrator's decision. The Fifth Circuit has made it clear that an ERISA claimant must present his or her evidence to the Claims Administrator for consideration of such evidence in connection with the underlying claim for benefits. A claimant

---

[20] Doc. 16.

[21] Doc. 17, at 1, ¶ III.

[22] Document 21, at 5.

may not sidestep the administrative process (nor the appeal process, as discussed below) by withholding evidence from the Claims Administrator. This Court's role is to review the Plan Administrator's determination, not to rule upon evidence supporting the plaintiff's claim as a matter of first impression. *See, e.g.,* Gooden v. Provident Life & Accident Insurance Company, 250 F.3d 329, 333 (5th Cir. 2001); Vega v. National Life Insurance Services, Inc., 188 F.3d 287, 299 (5th Cir. 1999) (*en banc*).

For these reasons, Exhibit A to the plaintiff's Trial Brief cannot be considered by this Court in its review of MetLife's decision.

## II. Appeal

A closely-related question is presented by the fact that MetLife's administrative appeal process was never completed before the plaintiff initiated this litigation. The Plan clearly establishes an appeal process for denied claims. "If your claim is denied in whole or in part, you may request an appeal of the denial."[23] The record reveals that plaintiff was aware of this process; her counsel submitted correspondence to MetLife initiating an appeal of the denial of benefits.[24] However, the instant lawsuit was initiated the day immediately after Ms. Lavergne declared her intention to appeal, and consequently before MetLife could have received even the correspondence containing that appeal notice.

Normally, exhaustion of all administrative remedies must be completed prior to the time that a party may seek review of the denial of benefits under an ERISA plan. McGowin v. Manpower International, Inc., 363 F.3d 556, 559 (5th Cir. 2004). However, the Fifth Circuit has recognized an

---

[23] Administrative Record, SPD 033.

[24] Id., M 118.

exception to the exhaustion requirement in those cases where such exhaustion would constitute a futile act. *See* Hall v. National Gypsum Company, 105 F.3d 225, 232 (5th Cir. 1997); Denton v. First National Bank of Waco, Texas, 765 F.2d 1295, 1302 (5th Cir. 1985). Indeed, the Fifth Circuit has quoted with approval the observation by Judge Tjoflat of the Eleventh Circuit that "there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not." Hall, 105 F.3d at 232.

In this particular case, it is clear that a remand of this matter to MetLife to complete the administrative appeals process would constitute a futile act, and this is demonstrated by the plaintiff's submission of Exhibit A. As noted above, MetLife informed Ms. Lavergne that it would need specific types of information in order to consider extending her disability benefits beyond January 5, 2004, specifically: (a) a completed Attending Physician Statement form; (b) copies of all current office notes and test results; (c) a copy of Physical Therapy Evaluation; (d) the reason that recovery has been delayed; (e) information concerning her functional abilities; and (f) her expected return to work date. Rather than submitting the required information, plaintiff *once again* submitted incomplete and non responsive material. Exhibit A submitted by the plaintiff to demonstrate that she is entitled to benefits consists only of correspondence from Dr. George Williams containing two brief paragraphs:

> Ms. Paula D. Lavergne is a very pleasant lady being followed up for back pain and spondylolysis.
>
> Examination shows she is having severe pain. Because of her injury and severe numbness, and distribution of pain, this patient is disabled. We will continue to follow her.[25]

---

[25] Plaintiff's Trial Brief [Doc. 21], Exhibit A.

The evidence that the plaintiff relies upon to prove that she is entitled to benefits *under the Plan* demonstrably does not provide MetLife with the information it has informed her it requires *in order to ascertain* whether or not Ms. Lavergne is "disabled," *as defined by the Plan*. Moreover, no explanation has been provided for the substantial discrepancy between Dr. Williams' December 9, 2003 office note and his correspondence to MetLife, both before and after that date. Given the continuing and repeated substantial gaps between the plaintiff's burden of proof (both before MetLife and before this Court) and the evidence she has produced to date, this Court has no reason to believe that either the plaintiff or her physician would be any more forthcoming after a remand of this matter than they have been to this point in time.

Consequently, this Court finds that the actions of Ms. Lavergne and Dr. Williams have made it clear that a remand of this matter would be a futile act and, for that reason, will consider the merits of the claims which have been asserted herein without requiring further exhaustion of administrative remedies.

### III. MetLife's Decision to Deny Ms. Lavergne's Claim

The parties have agreed that the claims asserted herein are controlled by the ERISA, 29 U.S.C. § 1001, *et seq.*, and that no state law claim has been asserted herein. As such, the plaintiff's claim is limited to an appeal of the Claims Administrator's denial of her claim pursuant to 29 U.S.C. § 1132(a)(1)(B): "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

"ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." Bratton v. National Union Fire Insurance Company of

Pittsburgh, PA, 215 F.3d 516, 521-22 (5th Cir. 2000). "[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 521. "When an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." Id. at 521 n.4.

In the case at bar, the language of the Plan is clear that the Claims Administrator (MetLife) was given full discretion to interpret the Plan, to find the facts applicable to specific claims for benefits, and, ultimately, to determine whether or not benefits were to be paid in response to any given claim:

> The Administrative Committee, as the Plan Administrator, and *any entity to whom the Administrative Committee delegates any of its authority regarding plan administration interpretation and the payment of and review of claims . . . has the fullest exclusive discretionary authority to make all determinations under the Plans, including, but not limited to, the authority to construe and to interpret the Plans, to decide all questions of eligibility for the benefits (including any necessary factual determinations)* and to determine the amount of such benefits; its decisions on all such matters and determinations are final and conclusive and shall be provided the fullest discretion provided by law.[26]

In view of the unambiguous language of the Plan – and as the parties have stipulated – this Court finds that MetLife had the discretion, pursuant to the Plan, to determine whether or not Ms. Lavergne had submitted sufficient evidence to demonstrate that she was entitled to continuing disability benefits beyond January 5, 2004. As a result, this Court will apply the abuse of discretion standard in reviewing MetLife's decision.

The Fifth Circuit has described the abuse of discretion review, as applied to a Claims Administrator's factual findings. "When applying the abuse of discretion standard, 'we analy[ze]

---

[26] Administrative Record, SPD 037 (emphasis added).

-11-

whether the plan administrator acted arbitrarily or capriciously. A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence. An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.' We must find that '[w]ithout some *concrete evidence* in the administrative record that supports the denial of the claim, . . . the administrator abused its discretion.'" Lain v. Unum Life Insurance Company of America, 279 F.3d 337, 342-43 (5th Cir. 2002) (citations omitted) (emphasis in original).

Ms. Lavergne's only challenge to MetLife's decision is a factual one: she claims that MetLife is wrong in concluding that she has not submitted sufficient evidence of her disability. Thus, the only question this Court must answer in reviewing MetLife's decision is whether the claims administrator acted arbitrarily or capriciously, meaning that there is no "rational connection between the known facts and the decision or between the found facts and the evidence." Lain, 279 F.3d at 342-43.

Ms. Lavergne argues that the evidence clearly establishes her disability status, relying primarily upon statements made by her treating physician, Dr. Williams, in a submission to MetLife dated October 20, 2003, concerning her physical condition at that time.[27] Were that statement the only evidence in the record concerning Ms. Lavergne's physical abilities, she might well be correct that MetLife would have been unjustified in denying her claim. Indeed, the record clearly shows that MetLife agreed with Ms. Lavergne that she was disabled at that time because it approved her claim on the basis of Dr. Williams' October 20, 2003, statement.

---

[27]  Administrative Record, M 022-24.

As discussed briefly in the "Facts" section above, however, the difficulty in the administrative record (and, thus, the disagreement between the parties) did not begin until December 2, 2003, when Dr. Williams wrote a note to MetLife indicating that Ms. Lavergne was in a great deal of pain, that she needed to be out of work for at least six (6) months, and that it would take a total of approximately 18 months for a full recovery from surgery, following which one week later he issued another note indicating that her pain had resolved and that she was doing "quite well." The administrative record makes it perfectly clear that Dr. Williams believes that Ms. Lavergne is in no condition to return to work. However, it is bereft of underlying information that supports such a conclusion and, as such, demonstrably supports MetLife's decision to terminate benefits as of January 5, 2004. Both the conflicting descriptions of Ms. Lavergne's condition *and* the specific language in the Plan provide ample justification for MetLife's request for more specific information about Dr. Williams' findings, the objective basis for those findings, etc.

As described hereinabove, the Plan makes it very clear that the obligation to produce persuasive evidence is on the employee, not on MetLife, and this conclusion is fully consistent with Fifth Circuit jurisprudence.[28] In making her argument to this Court, the plaintiff has not acknowledged, in any way whatsoever, the conflicting reports issued by Dr. Williams, MetLife's request for additional information, or the standard to which she is held under the terms of the Plan. As such, she has provided this Court with no basis for finding that MetLife's actions were arbitrary, capricious, or unreasonable in any way.

---

[28] It is not the Plan Administrator's burden to conduct an investigation as to whether or not the claimant is entitled to the benefits at issue. Both ERISA and the Fifth Circuit have made it abundantly clear that the burden rests upon the claimant to demonstrate that she is entitled to the benefits she seeks. Gooden, 250 F.3d at 333; Vega, 188 F.3d at 298.

## IV. Cross-claims for Attorney's Fees

Both the plaintiff and the defendant have made claims for attorney's fees pursuant to the fee-shifting provision of ERISA: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). With regard to Ms. Lavergne's claim, this Court's rejection of her substantive claim carries with it a rejection of her request for attorney's fees. Thus, the only claim this Court must address is that asserted by MetLife.

The Fifth Circuit has upheld the viability of the fee-shifting provision and has identified several factors which a court should consider in determining whether or not to award fees under ERISA.

> We think that it would be helpful for district courts to have some guidelines to assist them in exercising their discretion, and we are certain that it would be helpful for us if the courts justified their decisions in terms of such guidelines. In deciding whether to award attorneys' fees to a party under section 502(g), therefore, a court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980) (citations omitted).

In considering the listed factors, this Court finds that there is no evidence to suggest that either Ms. Lavergne or her counsel are in bad faith in asserting the claims which appear in this action, although the claims as asserted here have no legal merit. Similarly, there is no evidence upon which this Court could make a finding as to Ms. Lavergne's or her counsel's financial ability to

satisfy an award of attorney's fees. The fourth factor – which looks to whether or not an action has been brought for the purpose of benefitting participants or beneficiaries who are not before the Court – is not relevant here, as Ms. Lavergne's challenge is directed solely at the factual findings that apply to her specific case and does not have the ability to benefit, or to harm, other participants or beneficiaries. Finally, there is the question of deterrence and whether, in this case, a fee-shifting award in favor of the defendant would work to deter others from asserting similarly meritless claims. There is no reason to believe that this Court's actions in this particular case (which has not been prosecuted as a high-profile action with much at stake or in any manner other designed to impact other people, other claims, or other members of the bar) would have any such deterrence effect.

In the end, the only factor which weighs decisively in favor of the defendant is the fact that there is so little merit to the plaintiff's claim as presented. While the question is a close one, the factor which would persuade this Court to award attorney's fees is plaintiff's knowledge of the particular information required in order for the plan administrator to make his or her determination on the merits and plaintiff's abject refusal to provide that information. However, closer review reflects the requested information could have come only from the treating physician and clearly plaintiff made a request of the physician for information - exactly of what nature is not known. However, as defendant has shown it gave notice of what information was required, contacted plaintiff thereafter to inform plaintiff that the physician information submitted was not sufficient and gave plaintiff another opportunity to provide the required information and plaintiff did not, and as plaintiff gave notice of her intention to appeal, yet filed suit the next day, thus granting defendant no opportunity to rectify the problem internally - and as plaintiff has given no explanation for her actions, this Court would seem to be left with little choice but to award attorney fees. However, this

Court finds plaintiff's actions stem not from deliberate intent, but from a lack of cooperation on the part of the treating physician and/or a lack of understanding on the part of plaintiff or plaintiff's counsel of the rather complex processes involved in pursuing an ERISA claim,[29] rather than bad faith or culpability on the part of plaintiff. Plaintiff clearly was disabled and actually received disability payments, thus there is no hint of fraud or culpability as to her medical condition, rather the lack was her understanding of the system and the processes and procedures therein. Thus, this Court will not award attorney fees, but cautions counsel and plaintiff that abject failure to act within the confines of the Plan and the law placed both at grave risk of being cast with attorney's fees.

## CONCLUSION

For the foregoing reasons, all claims asserted herein on behalf of Ms. Lavergne and MetLife will be DENIED and DISMISSED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _2_ day of March, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[29] This Court notes plaintiff's filing a notice of appeal and yet filing suit before this Court the next day, as evidence of the lack of understanding of the procedures and processes at play.